JOHN HORTSMAN, PLAINTIFF IN ERROR, *v.* JOHN HENSHAW, WILLIAM WARD, AND JOSEPH W. WARD, MERCHANTS AND COPARTNERS, DOING BUSINESS UNDER THE FIRM AND STYLE OF HENSHAW, WARD, & Co., DEFENDANTS IN ERROR.

Where a bill of exchange had upon it the forged indorsement of the payees, but it had been put into circulation by the drawers with such forged indorsement already upon it, and it was purchased in the market by a *bonâ fide* holder, who presented it to the drawee, who accepted and paid it at maturity, and then the drawers failed, the drawee cannot recover back the money which he had paid to the *bonâ fide* holder.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for Massachusetts.

The whole case is set forth in the declaration and bill of exceptions, which were as follows.

"JOHN HORTSMAN, of London, in that part of the kingdom of Great Britain and Ireland called England, a subject of the Queen of Great Britain and Ireland, alien to each and every of the United States of North America, and not a citizen of either or any of said States, Esquire, *versus* JOHN HENSHAW, WILLIAM WARD, and JOSEPH W. WARD, of Boston, in said District, merchants and copartners, doing business under the firm and style of Henshaw, Ward, and Company, and citizens of the State of Massachusetts, one of the United States of North America.

"In a plea of the case, for that whereas, heretofore, to wit, on the       day of January, in the year 1845, the said defendants, by their agents at London aforesaid, presented to said plaintiff a certain bill of exchange in writing, made by certain persons under the name and style of Fiske & Bradford, at said Boston, on the 15th day of November, in the year 1844, directed to said plaintiff at London aforesaid, and requesting him, at sixty days after sight of that their first of exchange, second and third of same tenor and date unpaid, to pay to the order of Fiske & Bridge the sum of six hundred and forty-two pounds sterling; said bill of exchange purporting to be indorsed by said Fiske & Bridge, the payees thereof, and also indorsed by said defendants; and said defendants through their said agents, required the acceptance and payment of the said bill of exchange by said plaintiff, and thereby represented to said plaintiff, and undertook, that said bill of exchange was true and genuine, and the signatures thereto and the indorsements thereon were also genuine; whereupon, confiding in the representations and undertakings aforesaid of said defendants, the said plaintiff accepted and paid the

amount of said bill of exchange, when the same became due and payable, to the said defendants, through their said agents; but the plaintiff avers that the said bill of exchange was not indorsed by said Fiske & Bridge, the payees thereof, or by any person or persons thereunto authorized by them, but that the indorsement thereon, purporting to be their name and signature, was a forgery, of which said defendants had due notice; by means whereof said bill of exchange became and was to said plaintiff wholly worthless and valueless, and the payment of the amount thereof to said defendants by said plaintiff, confiding and trusting in the representations and undertakings aforesaid of said defendants, was wholly without consideration; and that the representations aforesaid of said defendants, confiding in which said plaintiff accepted and paid the amount of said bill to said defendants, were untrue; and that said defendants have not complied with or fulfilled their undertakings and agreements aforesaid; and that thereby said defendants became and were justly indebted to said plaintiff in the amount of said bill, to wit, the amount of six hundred and forty-two pounds sterling, of the money of Great Britain; and, in consideration thereof, promised the said plaintiff to pay him the same when they should be thereunto requested.

" And, also, for that the said defendants, on the day of the purchase of this writ, being indebted to the plaintiff in the sum of five thousand dollars, for goods sold and delivered by the plaintiff to the defendants; and in the same amount for work done, and materials for the same, provided by the plaintiff for the defendants at their request; and in the same amount for money lent by the plaintiff to the defendants; and in the same amount for money received by the defendants to the use of the plaintiff; and in the same amount for money paid by the plaintiff for the use of the defendants at their request; and in the same amount for money due from the defendants to the plaintiff for interest of money before then due and owing from the defendants to the plaintiff, and by the plaintiff forborne to the defendants, at the defendants' request, for a long time before then elapsed; in consideration thereof, promised to pay the same to the plaintiff on demand, yet they have not paid the same; to the damage of the said plaintiff, as he says, the sum of five thousand dollars.

" This action was entered at the October term of this court, A. D. 1845, and was thence continued from term to term until the present term.

" And now the defendants come to defend, &c., and for a plea say that they never promised in manner and form as the

plaintiff doth allege in his writ, and of this put themselves on the country.

.W. WHITING, *their Attorney.*

" And the plaintiff doth the like, by

FLETCHER WEBSTER, *his Attorney.*

" Issue being thus joined, the cause, after a full hearing, is committed to a jury sworn according to law to try the same, who, after hearing all matters and things concerning the same, return their verdict therein, and upon oath, that is to say:

" The jury find that the defendants did not promise in manner and form as the plaintiff hath alleged against them in his writ.

" It is therefore considered by the court that the said John Henshaw, William Ward, and Jos. W. Ward, recover against the said John Hortsman the costs of suit, taxed at       ."

### *Bill of Exceptions.*

" Circuit Court of the United States for the First Circuit, October term, 1846.

*District of Massachusetts, ss.*

" HORTSMAN *v.* HENSHAW ET AL.

" This was an action of assumpsit, brought to recover $ 3,114.70, and interest and damages.

" On the trial of the cause, the following facts were either proved or admitted.

" On the 15th day of November, 1844, at Boston, Fiske & Bradford, copartners, drew their bill of exchange for six hundred and forty-two pounds sterling, payable at sixty days' sight to the order of Fiske & Bridge, and directed the same to the plaintiff at London. Fiske & Bridge were a mercantile firm in Boston at that time.

" The names of Fiske & Bridge, the payees, were forged on the bill; said bill of exchange, with the forged indorsement of the payees' names, was delivered by the drawers, or one of them, to Thayer & Brothers, brokers, who sold the same, among other bills of exchange, in the usual course of business, to the defendants, *bonâ fide* and for full value.

" The defendants indorsed this bill to Baring, Brothers, & Co., at London, for collection, by whom it was presented to the plaintiff, and accepted by him, and paid at maturity on the 1st of January, 1845, and the proceeds placed to the credit of the defendants. This suit was commenced September, 1845. In April, 1845, the drawers became insolvent, and continued so to the time of the trial. One of them received his discharge under the insolvent laws of Massachusetts.

" It was not shown that said payees had any interest in or any knowledge of said bill of exchange, but the contrary.

" Neither the plaintiff nor the defendant had any suspicion of the forgery at the time of the sale and purchase, acceptance and payment, of the said bill; and no demand or notice to the defendants was proved to have been made in relation to said bill, or the subject-matter of said suit, prior to bringing this action.

" At the trial the plaintiff's counsel requested the presiding judge to charge the jury, that, if the forgery were proved, the defendants would be liable to refund to the plaintiff the amount paid them by him on said bill, with interest and damages; but the judge declined so to instruct the jury; and, on the contrary, ruled that if the drawers of the bill sold it for their own benefit, with the names of the payees indorsed upon it when it passed out of their hands, though such indorsement were forged, and received the amount of said bill, and afterwards remained in good credit until April, 1845, and then became insolvent, and have since remained so, and no notice was given to or demand made upon the defendants in relation to said bill or the subject-matter of this suit until this suit was commenced, then the plaintiff could not recover.

" Thereupon the jury found a verdict for the defendants.

" To these rulings the plaintiff's counsel excepted, and his exceptions, being found conformable to the truth, are allowed.

" PELEG SPRAGUE, *Judge, &c.*"

Upon this exception the cause came up to this court, where it was argued by *Mr. Fletcher Webster*, for the plaintiff in error, and submitted by *Mr. Curtis*, upon a printed brief prepared by *Mr. Whiting*, for the defendants in error.

The counsel for the plaintiff in error relied upon the following points.

1. No title can be acquired through a forgery. Johnson *v.* Windle, 3 Bing. N. C. 225, 229; Mead *v.* Young, 4 T. R. 28; Chitty on Bills, 10th Am. ed., 260; Canal Bank *v.* Bank of Albany, 1 Hill, (N. Y.) 287.

2. A bill is no payment to the person in whose favor it is drawn, unless indorsed by him. Smith *v.* Chester, 1 T. R. 654; Chitty on Bills, 261, 262, note.

3. An acceptor is not bound to know the handwriting of an indorser. Story on Bills, §§ 412, 451.

4. The indorser of a bill guaranties the genuineness of all signatures prior to his own; if he does not choose to make inquiries of any of the parties whose names appear on the bill,

having an opportunity of doing so, it is his own fault, and amounts to laches.

Where two parties are equally innocent, that one whose misfortune comes by his own negligence should bear the loss, and not he to whom no want of due caution can be attributed. Chitty on Bills, 430; U. States Bank *v.* Bank of Georgia, 10 Wheaton, 344, 354.

5. Immediate notice of forgery by the acceptor is not necessary in order to enable him to recover. Chitty on Bills, 261; 1 Hill, (N. Y.) 287.

6. Nor is notice necessary at all, unless when, for want of it, the rights of parties may be prejudiced or lost; where no such rights are affected, it is not necessary in order that the acceptor of a forged bill may recover of the holder. Chitty on Bills, 427; Johnson *v.* Windle, 3 Bing. N. C. 225.

7. But the plaintiff may recover back the money paid as having been paid under mistake. See cases before cited.

The points made by the counsel for the defendants in error were the following.

1. It is presumed that the drawee who accepts a bill has funds of the drawer in his hands; and, as against the holder, this could not be rebutted by proof of the fact. But in this case there is no such proof. See Chitty on Bills, 303 (10th Am. ed.).

2. Plaintiff's action is brought to recover money as paid under a mistake of fact; but the money was not paid under mistake of any material fact. Plaintiff lost nothing by forgery of payee's name, for the payee would not have been bound to the acceptor if his indorsement had been genuine. The acceptor gives credit only to the drawer, and not to any intermediate indorser.

3. The drawer, having sold the bill with the payee's name indorsed thereon, (whether forged or not,) and having received the amount of the bill, cannot deny the genuineness of the indorsement. The acceptor has only appropriated the funds of the drawer according to his request, and the drawer cannot deny that request. Lobdell *v.* Baker, 1 Metcalf, 193; Lobdell *v.* Baker, 3 Metcalf, 469.

4. Where any act of the drawer facilitates a forgery, the drawer must bear the loss; *a fortiori*, he must bear it where he negotiates a bill with a forged indorsement. But if the drawer is charged, the defendant is discharged. Byles on Bills, 250; Young *v.* Grote, 4 Bing. 253.

5. A bill payable to a fictitious person or order, and indorsed in the payee's name, will be deemed payable to bearer in favor

of a *bonâ fide* holder; and, in every case where the drawer indorses the payee's name on the note, it may be declared on as against the drawer as payable to bearer. Story on Bills, § 56; Vose *v.* Louis, 3 T. R. 182; Colliñs *v.* Emmett, 1 H. Bl. 313, 569; Tatlock *v.* Harris, 3 T. R. 174; Minet *v.* Gibson, 3 T. R. 481.

6. The plaintiff's proposition, that no title can be acquired by means of a forgery, is inapplicable to this case, because here the drawer delivers the note bearing the forged indorsement. And this case is distinguished from those where the acceptor has recovered money paid on a forged indorsement made after the bill left the drawer's hands; because in those cases the drawer did not order the acceptor to pay the holder, and in this case he does so order the acceptor.

7. The reason why the acceptor, paying a bill on the faith of a forged indorsement, may recover of the holder, is, that the holder has no title to the bill; but in this case the holder had a perfect title to the bill.

8. The indorser does not guaranty the genuineness of all previous signatures to the drawee, but his engagement with the drawee is discharged if the drawee has the drawer's authority, for paying and charging him.

9. If the drawee in this case is a loser, it is because he has paid without funds of the drawer in his hands, and because the drawer has failed. But the indorser does not warrant to the acceptor the drawer's solvency, nor undertake to protect the acceptor in such a payment.

10. If the plaintiff could maintain his action in any event, it could not be without giving immediate notice of the forgery to the defendant. Cocks *v.* Masterman, 9 Barn. & Cres. 902; Smith *v.* Mercer, 6 Taunt. 76; Gloucester Bank *v.* Salem Bank, 17 Mass. 33; Bank of St. Albans *v.* Farmers and Mechanics' Bank, 10 Verm. 141.

11. No cause of action could accrue, until the plaintiff had demanded payment of the defendant.

Mr. Chief Justice TANEY delivered the opinion of the court.

The material facts in this case may be stated in a few words.

Fiske & Bradford, a mercantile firm in Boston, drew their bill of exchange upon Hortsman of London, payable at sixty days' sight to the order of Fiske & Bridge, for six hundred and forty-two pounds sterling. The drawers, or one of them, placed the bill in the hands of a broker, with the names of the payees indorsed upon it, to be negotiated; and it was sold to the defendants in error *bonâ fide* and for full value. They transmitted it to their correspondent in London, and upon presentation

it was accepted by the drawee, and duly paid at maturity. The payees and indorsees all resided in Boston, where the bill was drawn and negotiated.

It turned out that the indorsement of the payees was forged, — by whom does not appear; and a few months after the bill was paid, the drawers failed and became insolvent. The drawee, having discovered the forgery, brought this action against the defendants in error to recover back the money he had paid them.

The precise question which this case presents does not appear to have arisen in the English courts; nor in any of the courts of this country with the exception of a single case, to which we shall hereafter more particularly refer. But the established principles of commercial law in relation to bills of exchange leave no difficulty in deciding the question.

The general rule undoubtedly is, that the drawee by accepting the bill admits the handwriting of the drawer; but not of the indorsers. And the holder is bound to know that the previous indorsements, including that of the payee, are in the handwriting of the parties whose names appear upon the bill, or were duly authorized by them. And if it should appear that one of them is forged, he cannot recover against the acceptor, although the forged name was on the bill at the time of the acceptance. And if he has received the money from the acceptor, and the forgery is afterwards discovered, he will be compelled to repay it.

The reason of the rule is obvious. A forged indorsement cannot transfer any interest in the bill, and the holder therefore has no right to demand the money. If the bill is dishonored by the drawee, the drawer is not responsible. And if the drawee pays it to a person not authorized to receive the money, he cannot claim credit for it in his account with the drawer.

But in this case the bill was put in circulation by the drawers, with the names of the payees indorsed upon it. And by doing so they must be understood as affirming that the indorsement is in the handwriting of the payees, or written by their authority. And if the drawee had dishonored the bill, the indorser would undoubtedly have been entitled to recover from the drawer. The drawers must be equally liable to the acceptor who paid the bill. For having admitted the handwriting of the payees, and precluded themselves from disputing it, the bill was paid by the acceptor to the persons authorized to receive the money, according to the drawer's own order.

Now the acceptor of a bill is presumed to accept upon funds of the drawer in his hands, and he is precluded by his acceptance from averring the contrary in a suit brought against him

by the holder. The rights of the parties are therefore to be determined as if this bill was paid by Hortsman out of the money of Fiske & Bradford in his hands. And as Fiske & Bradford were liable to the defendants in error, they are entitled to retain the money they have thus received.

We take the rule to be this. Whenever the drawer is liable to the holder, the acceptor is entitled to a credit if he pays the money; and he is bound to pay upon his acceptance, when the payment will entitle him to a credit in his account with the drawer. And if he accepts without funds, upon the credit of the drawer, he must look to him for indemnity, and cannot upon that ground defend himself against a *bonâ fide* indorsee. The insolvency of the drawer can make no difference in the rights and legal liabilities of the parties.

The English cases most analogous to this are those in which the names of the drawers or payees were fictitious, and the indorsement written by the maker of the bill. And in such cases it has been held that the acceptor is liable, although, as the payees were fictitious persons, their handwriting of course could not be proved by the holder. 10 Barn. & Cres. 478. The American case to which we referred is that of Meachim *v.* Fort, 3 Hill, (S. C.) 227. The same question now before the court arose in that case, and was decided in conformity with this opinion.

Another question was raised in the argument upon the sufficiency of the notice; and it was insisted by the counsel for the defendants, that, if they could have been made liable to this action by the plaintiff, they have been discharged by his laches in ascertaining the forgery and giving them notice of it.

But it is not necessary to examine this question, as the point already decided decides the case.

The judgment of the Circuit Court is affirmed, with costs.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Massachusetts, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs.